# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARGARET MCGREEVY, GERALD J. JACOBY, and ELAINE DANIELLE ANDERSON, individually and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br><br>    v.<br><br>LIFE ALERT EMERGENCY RESPONSE, INC.,<br><br>                Defendant. | Civ. Action No. 1:14-cv-07457 (LGS)<br>(MHD)<br><br><br>SETTLEMENT AGREEMENT |

## TABLE OF CONTENTS

Page

I.      RECITALS..............................................................................................1

        A.      Actions Filed ...........................................................................1

II.     DEFINITION OF SETTLEMENT CLASSES AND CLAIMANTS ..............1

III.    COMPROMISE AND ACKNOWLEDGMENT ...........................................2

IV.     TERMS OF THE SETTLEMENT AGREEMENT.......................................3

        A.      Effective Date...........................................................................3

        B.      Appointment Of Settlement Administrator ...........................................4

        C.      Preliminary Approval And Notice To Class Members..........................4

        D.      Waiver And Release .................................................................8

        E.      Settlement Amounts .................................................................9

                1.      Gross Settlement Amount ...............................................9

                2.      Net Settlement Amount..................................................9

                3.      Attorney's Fees and Litigation Costs.................................9

                4.      Cost of Settlement Administration....................................10

                5.      Class Representative Enhancement ...................................10

                6.      Employer Payroll Taxes ................................................10

                7.      Unapproved Amounts ...................................................11

                8.      Payment Amounts to Settlement Class Members.....................11

                9.      Final Settlement Amount ...............................................13

                10.     Class Size .................................................................14

        F.      Final Approval..........................................................................14

        G.      Delivery Of Settlement Checks...................................................15

        H.      Dismissal Of Action With Prejudice ............................................15

        I.      Documents................................................................................16

        J.      Parties' Authority......................................................................16

        K.      Mutual Full Cooperation ...........................................................16

        L.      Enforcement Actions .................................................................16

M.     Limitations On Publicity ...................................................................17

N.     Modification. ......................................................................................17

O.     Entire Agreement...............................................................................17

P.     Voiding The Agreement.....................................................................17

Q.     Counterparts ......................................................................................18

R.     Miscellaneous....................................................................................18

Case 1:14-cv-07457-LGS Document 155-1 Filed 06/17/16 Page 5 of 23

## SETTLEMENT AGREEMENT

Named plaintiffs Margaret McGreevy, Gerald J. Jacoby, Elaine Danielle Anderson (collectively "plaintiffs"), on behalf of themselves and all "settlement class" members as defined in paragraph II.A. below, and defendant Life Alert Emergency Response, Inc. ("defendant" or "Life Alert"), hereby enter into this Settlement Agreement ("Agreement") to resolve all claims asserted by plaintiffs individually and on behalf of all members of the settlement classes against Life Alert in the action referred to in paragraph I.A. below.

I.      RECITALS

   A.      Actions Filed

On September 15, 2014, plaintiff Margaret McGreevy filed *McGreevy v. Life Alert Emergency Response, Inc.*, No. 14-cv-07457-LGS (S.D.N.Y.). Subsequently, plaintiff filed first and second amended complaints. Plaintiff alleges that Life Alert misclassified its salespersons or direct sellers and failed to pay them minimum and overtime wages in violation of the Fair Labor Standards Act and New York law and minimum wages in violation of Florida law.

II.     DEFINITION OF SETTLEMENT CLASSES AND CLAIMANTS

   A.      There are three "settlement classes" covered by this Agreement. The settlement classes include all current and former Life Alert salespersons who (1) worked in New York and were classified as independent contractors at any time from September 15, 2008 through the date the Court enters an order approving preliminarily this Agreement (the "New York class"); (2) worked in Florida and were classified as independent contractors at any time from September 15, 2009 through the date the Court enters an order approving preliminarily this Agreement (the "Florida class"), and (3) opted-in to the FLSA collective action (the "FLSA class") no later than October 1, 2015 and within three years of their last date of working for Life Alert as a salespersons.

   B.      "Claimants" are settlement class members who do not opt-out of the settlement and timely return a completed claim form as described in paragraphs IV.C.6-9 and IV.C.12. Persons who opted-in to the FLSA collective action are not claimants; the term "claimants" herein refers only to persons who are members of the Florida or New York classes and who file timely claims.

   C.      Nothing herein will be considered an admission or acknowledgment by the parties that any class is either proper or improper in this action, except for

1

purposes of settlement.  Neither the Agreement nor approval by the Court of the Agreement will be admissible in any other proceeding regarding the propriety of class action treatment.

D.     In the event this Agreement is not approved, is terminated, or fails to be enforceable, the parties will not be deemed to have waived in this action their claims, positions, objections, or defenses, including their positions on whether the action is appropriate for class treatment.

E.     Plaintiffs will request and defendant will not oppose the appointment of Rachel Bien, Melissa L. Stewart, and Chauniqua Young of Outten & Golden LLP as class counsel.

III.   <u>COMPROMISE AND ACKNOWLEDGMENT</u>

A.     The parties and their respective counsel agree that this Agreement is entered into solely upon the basis of a compromise of disputed claims, and that the Agreement is not, and is not to be construed as, an admission by the parties of any liability or violation of any federal, state, local, or common law, or of any statute, ordinance, regulation, or order nor as an admission by plaintiffs and their counsel that any of the defenses asserted in these actions by the defendant are meritorious.

B.     The parties have conducted discovery and fact investigation of the claims and defenses asserted in this action, including interviews of current and former Life Alert salespersons and written discovery.  The parties have analyzed the facts and relevant law.

C.     Plaintiffs believe that the claims asserted have merit.  However, they recognize the significant cost to prosecute the litigation against Life Alert through trial and possible appeals, the uncertain outcome and risk of loss in any litigation, especially in complex actions such as these, and the difficulties and delays inherent in such litigation.  Plaintiffs also are mindful of the potential problems of proof and possible defenses to the causes of action asserted.

D.     Relying on their fact investigations and analysis of relevant law, the parties have engaged in good faith settlement negotiations.  The negotiations were conducted with the assistance of David Rotman of Gregorio, Haldeman & Rotman, an experienced complex litigation mediator.

E.     Plaintiffs believe that this Agreement confers substantial benefits on class members and that it is fair, reasonable, adequate, and in the best interest of themselves and the settlement classes.

F.      Class counsel have fully considered and independently determined that the terms of this Agreement are fair, reasonable, adequate, and in the best interests of the settlement classes, and determined that settlement and dismissal of these actions with prejudice is proper.

G.      Life Alert believes that the claims asserted by plaintiffs on behalf of themselves and the settlement classes are without merit. Life Alert denies all the claims and contentions alleged by the plaintiffs and all charges of wrongdoing and liability arising out of any of the acts, omissions, facts, transactions, or occurrences alleged or that could have been alleged in this action.

H.      Life Alert also denies that the litigation is proper for class treatment, except for settlement purposes, because of intractable management problems that would have been associated with a class trial and the individualized factual inquiry required to resolve each settlement class member's misclassification claim.

I.      Life Alert has vigorously contested the claims, but has determined that further defense of these actions would be protracted, expensive, and contrary to its best interests and that it is desirable the actions be completely and finally resolved upon the terms and conditions set forth therein. In addition, Life Alert has taken into account the uncertainty and risks inherent in litigation, especially in complex actions like this.

J.      Nothing in this Agreement or any action taken to implement it or any statements, discussions, communications, or materials prepared or used during the course of settlement negotiations will be used or considered evidence in any other proceeding involving an alleged violation of any federal, state, local law, duty, or obligation at law or equity. Notwithstanding the foregoing, the Agreement may be used in any proceeding that has as its purpose the interpretation or enforcement of the Agreement.

## IV.   TERMS OF THE SETTLEMENT AGREEMENT

A.      Effective Date: The "effective date" is defined herein as the later of the date when the Court enters an order granting final approval of the settlement and the earlier of two events occur: (1) the time for filing an appeal from the order expires without the filing of a notice of appeal, or (2) if a timely appeal is filed, the final resolution of that appeal (including any requests for rehearing or petition for certiorari), resulting in final judicial approval of the settlement or withdrawal of such appeal. Defendant is not required to make any payment under the settlement

until after the effective dates are reached in both *McGreevy* and *Barragan v. Life Alert Emergency Response, Inc.*, No. BC556127.

    B.    Appointment Of Settlement Administrator

    1.    The parties will retain Rust Consulting, Inc. as the settlement administrator to: (a) provide notice of the settlement to the settlement classes; (b) administer any opt-out requests and objections from settlement class members; (c) administer the claims process; (d) establish and administer a qualified settlement fund to disburse all settlement payments; (e) calculate settlement amounts for each claimant; (f) calculate and make all necessary payroll tax and other withholdings; (g) distribute all settlement checks; (h) address any questions from members of the settlement classes; (i) prepare and mail all necessary W-2 and 1099 IRS forms; (j) (k) administer any dispute by a settlement class member as to the accuracy of the class member's "qualifying workweeks," as defined in paragraph IV.E.8.a.; and (l) perform any other duties necessary to effectuate the Agreement.

    2.    The parties will cooperate to resolve any issues identified by the settlement administrator and each party will designate counsel to serve as the primary contact for the settlement administrator.

    C.    Preliminary Approval And Notice To Class Members

    1.    The parties agree to file a joint motion requesting preliminary approval of the settlement, conditional certification of the three settlement classes, approval of notice of settlement, and the appointment of plaintiffs' counsel as class counsel, no later than January 8, 2016.

    2.    Within 10 business days after entry by the Court of an order approving preliminarily the settlement, Life Alert will send the list of settlement class members to the settlement administrator. The list will include the name, last known address, social security number (if known), dates of work in the applicable period, work location, and email address (if known) for each member of the three settlement classes. Life Alert separately will provide class counsel with the total number of settlement class members (1) who appear on the list for each settlement class and (2) for whom Life Alert was unable to locate a last known address. The settlement administrator will use available databases and any contact information (including calling or emailing) to attempt to locate a mailing address for any class member for whom Life Alert is unable to locate a last known address.

    3.    Class counsel may provide address and email information to the settlement administrator for any settlement class member.

4

4.      The settlement administrator will send to each member of the three settlement classes the notice of preliminary approval of the settlement. The notice will be sent to the last known address (and email address, if known) for each settlement class member within 20 business days after preliminary approval. Such proposed notice is attached to the Agreement as exhibit A.

5.      The settlement administrator alone is responsible for mailing the notices of preliminary approval to settlement class members.

6.      The notice mailing to each New York and Florida settlement class member will also include a claim form, in the form that is attached as exhibit B to the Agreement. Claim forms may be returned to the settlement administrator via mail, email, fax, or the claims administrator's website.

7.      There will be a single reminder mailing 30 days after the initial notice mailing to each settlement class member. The notice and claim forms will not specify individual settlement amounts, but will include for each class member the number of workweeks during the relevant periods of the settlement and the total number of workweeks during the relevant periods of the settlement for the entire class. The notice, but not the claim form, will include the total amount of the settlement, a description of how the settlement will be allocated, and other significant terms of the settlement. For notices and claim forms that are returned as undeliverable, there will be a single re-mailing by the settlement administrator, using available databases. Claims that are untimely filed will not be paid, unless the parties agree or the Court directs otherwise. At the conclusion of the claims process the settlement administrator will provide the parties with the number of late filed claims and the names of the late claimants.

8.      Both the claims and opt-out periods will be 60 days from the date of mailing of the initial class notice and claim forms, except that the claims and opt-out periods for any undeliverable notices that are re-mailed will be the longer of (1) 60 days from the initial mailing, or (2) 30 days from the re-mailing.

9.      The notice of preliminary approval will inform class members that to receive any payment under the settlement, they must complete and sign the claim form and return it to the settlement administrator, postmarked no later than 60 days after the date the notice was initially mailed, subject to paragraphs IV.C.8. and IV.C.12. The settlement administrator will be solely responsible for deciding whether claim forms were timely returned and whether a settlement class member is a proper claimant. Settlement class members must provide proof of mailing if a dispute arises as to the timeliness of the filing of their claim form. If the settlement

administrator rejects a claim form because it was untimely submitted, it will inform the affected individual.  Notwithstanding the above, FLSA class members will not be required to submit any claim form, but they will be permitted to opt-out of the settlement.

10.     During the 60-day claims and opt-out period, the settlement administrator will report to the parties on a weekly basis the number of (i) notices of preliminary approval that are returned as undeliverable and (ii) settlement class members who have returned a completed claim form.  The settlement administrator will utilize available databases in an effort to find settlement class members whose notices were not delivered and, if successful, will then re-mail the notice within five days of obtaining a more current address.  The settlement administrator will post on its website a full copy of the notice.  Class counsel are free to provide at any time address information to the settlement administrator, but there will be no exceptions to the 60-day time period as measured from the initial mailing date for returning completed claim forms unless the parties agree to extend the date or the Court directs otherwise.

11.     Settlement payments to class members who file valid claims, and all FLSA class members who do not opt-out of the settlement, will be made from the net settlement amount, defined below.

12.     Settlement class members who fail to return a complete and timely claim form within the 60-day time period will be ineligible to receive any settlement payment pursuant to this Agreement.  A claim form is not complete if the settlement class member fails to (i) make the required declaration or (ii) sign the claim form as required.  Within five days after receipt of an incomplete form, the settlement administrator will notify the settlement class member in writing that he or she must correct the claim form ("cure notice").  The cure notice will enclose a pre-paid reply envelope.  Settlement class members must cure the deficiency by the later of (1) 60 days from the initial mailing; or (2) 15 days from the date of the cure notice.

13.     The notice of preliminary approval will also explain that any member of the settlement classes who desires to opt out of the settlement must submit a written request with the settlement administrator within 60 days of the initial mailing of the notice.  The written request must be a signed statement that includes the name, address, and telephone number of the settlement class member and request that the class member wishes to be excluded from the settlement.  To be effective, the request to be excluded from the settlement must be submitted to the claims administrator by U.S. mail and it must be postmarked no later than 60

6

days from the date of the initial mailing of the notice. A request to be excluded from the settlement that does not comply with this provision will be invalid. The settlement administrator will provide copies of opt-out requests to all counsel and class counsel will file any opt-out requests with the Court. Except as discussed below, neither the parties nor their counsel will engage in any effort to solicit or otherwise persuade members of the class to file claims or opt out of the settlement. Nothing in this paragraph prohibits class counsel from discussing with any class member who initiates contact with counsel whether to participate in or opt-out of the settlement. This paragraph does not prevent discussions between class counsel and named plaintiffs.

14.     In the event that the 50 percent requirement for either the New York or Florida settlement class has not been achieved at the close of the claims filing period, class counsel can contact class members who did not file a claim for a period of one week to encourage them to file claims or until the 50 percent floor requirement is achieved, whichever event is sooner. If the 50 percent floor is still not achieved at the end of one week, class counsel may contact class members who have not filed a claim for one additional week to encourage them to file claims or until the 50 percent floor requirement is achieved, whichever event is sooner. For each of the above settlement classes that falls below the 50 percent floor, and upon the request of class counsel, the settlement administrator will provide class counsel with a list of class members who did not file claims, including names, mailing and email addresses, and telephone numbers. Five days before the end of the 60-day claims period, the settlement administrator will provide the parties a calculation of the percentage of funds claimed within each class. The 50 percent floor provision is discussed in paragraph IV.E.8. below. For purposes of contacting class members who have not filed claims as provided above, 10 days after the claims period ends, the settlement administrator will provide the parties with the pro rata amounts that are allocated to each class member who has not filed a claim in the New York and Florida classes. Class counsel will randomly select class members to contact from these lists until the 50 percent floor is achieved as measured by commitments from the contacted class members to file a claim, subject to the one week limitation that is discussed above.

15.     The notice of preliminary approval will inform settlement class members that all objections to the settlement must be submitted to the Court and served upon all counsel of record no later than 60 days after the initial mailing of the notice of preliminary approval. Such objections must state the basis and, if the objector intends to appear at the final approval hearing, the fact and purpose of the appearance. The parties will be allowed to respond to objections within the period

7

established by the Court in its order granting preliminary approval. Members of the settlement classes who fail to file and serve timely objections will be deemed to have waived objections to the settlement and they will be foreclosed from making objections. By failing to make timely objections to the settlement, settlement class members will also be foreclosed from appealing any aspect of the settlement after final approval of the settlement. Only settlement class members who do not opt-out of the settlement may object to the settlement.

16.     If 15 or more settlement class members properly opt out of the settlement, Life Alert will have the right, but is not obligated, to withdraw from the Agreement in its entirety and the Agreement will be null and void for all purposes. The right to withdraw can be exercised only by a writing stating that Life Alert is withdrawing from the Agreement, which is sent to opposing counsel by e-mail and regular U.S. mail, no later than 10 days after the expiration of the opt-out period.

D.     Waiver And Release

1.     Plaintiffs and all members of the Florida and New York classes (except persons who timely and properly opt out of the settlement under paragraph IV.C.13 above), and their respective heirs, descendants, dependents, successors, executors, assigns, administrators, and respective entities through which they may have contracted with Life Alert, will fully and finally release and discharge Life Alert, its previous and present subsidiaries, affiliates, predecessors, successors, representatives, officers, directors, agents, attorneys, accountants, employees and assigns, in their individual, official, and/or corporate capacities, from any and all claims and rights of any kind that they might have, whether known or unknown, whether contingent or non-contingent, whether specifically asserted or not, arising through the effective date that are based on the alleged misclassification of current and former salespersons or direct sellers, under New York Labor Law, the Florida Minimum Wage Act, and any other local and state laws including, but not limited to, all wage and hour, common, tort, and contract laws for unpaid wages, penalties, business expenses, interest, liquidated damages, litigation expenses, and attorney's fees.

2.     Plaintiffs, all members of the FLSA class, and all persons who file claims under paragraph IV.C.9. will fully and finally release and discharge Life Alert and the other entities and persons referred to in paragraph IV.D.1. above from any and all claims and rights arising through the effective date under the Fair Labor Standards Act, New York Labor Law, the Florida Minimum Wage Act, and all the other local and state laws referred to in paragraph IV.D.1. that are based upon the alleged misclassification of current and former salespersons or direct sellers. The

8

released claims will not include claims for retaliation, discrimination, disability, or wage and hour claims that are unrelated to any alleged misclassification.

3.      The settlement classes will include all class members through the date of the order preliminarily approving the settlement.  The release of claims will be based on the actual claims alleged in or that could have been alleged in the complaints, based on the factual contentions in the complaint.  The plaintiffs will provide general releases of all claims.

4.      Nothing in this Agreement will be considered a waiver of any claims by settlement class members that may arise after the effective date.

5.      The parties acknowledge that the above waiver and release was separately bargained for and is a material element of the Agreement.

E.      Settlement Amounts

1.      Gross Settlement Amount:  In full consideration for the terms, conditions, and promises set forth in this Agreement, Life Alert agrees to pay a gross settlement amount not to exceed $3,281,250.  This amount includes (i) all settlement payments to class and collective members; (ii) all class and collective member withholdings and payroll taxes; (iii) class representative enhancements; (iv) all class counsel attorney's fees and litigation expenses; and (v) all settlement administrator costs.  The gross settlement amount will be allocated 23 percent to the FLSA class, 34 percent to the New York class, and 43 percent to the Florida class.  These allocations are based on the approximate number of workweeks for each settlement class and the approximate damages class members would have recovered if successful at trial.  The gross settlement amount is the maximum amount that Life Alert is obligated to pay under this Agreement; in no event will Life Alert be required to pay more than this amount, subject to paragraph IV.E.10.

2.      Net Settlement Amount:  The net settlement amount is defined as an amount equal to the gross settlement amount, less class counsel's attorney's fees and actual litigation costs, class representative enhancements, and settlement administrator costs.

3.      Attorney's Fees and Litigation Costs

a.      Life Alert agrees not to oppose a request by class counsel for reasonable attorney's fees up to 33 1/3 percent of the gross settlement amount plus actual litigation costs.  Class counsel agree that they will not request fees and expenses in excess of these amounts.  However, in no event will the total of class

9

counsel attorney's fees and litigation costs, class representative enhancements, and settlement administrator costs exceed 37.5 percent of the gross settlement amount.

b.      Class counsel must file their request for attorney's fees and litigation costs and class representative enhancements on the same day as the parties' joint motion for final approval of the settlement. The above amounts will be paid only from the gross settlement amount. The settlement is not contingent on approval of class counsel fees or class representative enhancements. Thus, even if the Court approves lesser amounts for attorney's fees, costs, or class representative enhancements, the Agreement will remain fully enforceable. Class counsel agree to share their request for attorney's fees and litigation costs with Life Alert counsel before such request is filed and will consider any proposed changes to the request by Life Alert.

c.      Within the later of 20 days after (i) the effective date or (ii) an order approving an award of attorney's fees and costs and the expiration of the time for appealing such order or, if appealed, exhaustion of such appeal, class counsel will provide Life Alert and the settlement administrator with a signed IRS form W-9.

d.      Within the later of 25 days after (i) receipt of the signed W-9 form described in paragraph IV.E.3.c.; (ii) the effective date of the settlements in *both* this litigation and *Barragan*; or (iii) an order approving attorney's fees and litigation costs and expiration of the time to appeal such an order or, if appealed, exhaustion of the appeal, the settlement administrator will transmit the funds for such attorney's fees and litigation costs by check or wire transfer (if requested) to class counsel.

4.      Cost of Settlement Administration:  The full cost of settlement administration, including payment for all services and mailings, will be paid from the gross settlement amount.

5.      Class Representative Enhancement:  In recognition of their leadership role on behalf of the settlement classes and time and effort in pursuing this action, defendant will not oppose a request for enhancements of $7,500 for plaintiff McGreevy and $5,000 each for plaintiffs Jacoby and Anderson. These plaintiffs will each execute a general release of all known or unknown claims in consideration for these enhancement payments.

6.      Employer Payroll Taxes:  The employer portion of payroll taxes for FICA, FUTA, SUTA, Medicare, and any other applicable payroll taxes for the

10

wage portion of payments to settlement class members will be paid from the net settlement amount. To the extent that there are insufficient funds remaining in the net settlement amount after the claims process is completed to pay the employer portion of payroll taxes due on the amounts claimed by settlement class members, the amounts allocated to each settlement class member who has filed a valid claim will be reduced on a proportionate basis such that the balance due of the employer portion of payroll taxes can be fully paid, so that the amounts paid to settlement class members plus the total amount of the employer portion of payroll taxes for those amounts will not exceed the net settlement amount.

7.      Unapproved Amounts:  If the Court reduces attorney's fees, litigation costs, or the class representative enhancements, the reduction will not affect the remaining terms of the settlement, and the amount of these reductions will become part of the net settlement amount and will be paid out to settlement class members, subject to the claims procedures described below.

8.      Payment Amounts to Settlement Class Members

a.      Settlement payments to individual class members in the New York and Florida classes will be solely on a claims made basis, subject to the requirement that at least 50 percent of the portion of the net settlement amount that is allocated to each of these classes will be paid to these settlement classes. If the amount claimed is less than 50 percent of the portion of the net settlement amount allocated to each such class, then the terms of paragraph IV.C.14 will be followed until the 50 percent requirement is satisfied. If the 50 percent requirement is still not satisfied after the provisions of paragraph IV.C.14 have been exhausted, the settlement administrator will adjust the settlement amounts which are allocated to each claimant to ensure that at least 50 percent of the net settlement amounts for the Florida and New York classes are distributed to members of these classes. The net settlement amounts will be allocated among settlement class members on a pro rata basis based on the total number of qualifying work weeks for each settlement class member during the relevant period. A "qualifying work week" is defined as a work week during which any settlement class member worked as a direct seller for Life Alert during the applicable time period described in paragraph II.A. Persons who previously opted in to the *McGreevy* FLSA class and do not file a claim form will not be included in any other settlement class in this litigation. In no event will any settlement class member be permitted a double recovery because of his or her inclusion in more than one settlement class in this litigation or in *Barragan*.

b.      Life Alert records will be used to determine the number of work weeks. After preliminary approval of the settlement by the Court, Life

11

Alert will provide the settlement administrator a complete list of settlement class members and the number of qualifying work weeks for each such settlement class member. The settlement administrator will calculate the amounts to be allocated to each settlement class member as described in paragraph IV.E.8.a. Settlement class members may challenge the number of qualifying workweeks by submitting to the settlement administrator in writing under penalty of perjury the alleged number of qualifying workweeks the class member claims to have actually worked as a direct seller during the relevant class period. Such members of the class should submit to the settlement administrator all supporting documents. Decisions by the settlement administrator will be final.

　　　　c.　　Settlement class members will be ineligible to receive a payment if they (i) opt-out of the settlement as set forth in paragraph IV.C.13, or (ii) fail to submit a timely and complete claim form in accordance with paragraphs IV.C.8-9 and IV.C.12. Thus, only claimants and FLSA class members who do not opt out will be eligible for a settlement payment.

　　　　d.　　Settlement payments made to individual claimants will be allocated as follows: 50 percent of the payment to each claimant will be treated as wages and the remaining 50 percent as non-wages. The settlement administrator will issue for each claimant an IRS form 1099 showing the amount of non-wages paid and IRS form W-2 showing the amount of back pay in the year it was paid.

　　　　e.　　The appropriate withholding of federal, state, and local income taxes, each claimant's share of FICA, FUTA, SUTA, Medicare, and any other payroll taxes including backup withholding, if required, will be made from the settlement payments to claimants. The settlement administrator will be solely responsible for all tax withholding determinations and payments. The settlement administrator will also issue an IRS form W-2 to all claimants at the times and in the manner required by the Internal Revenue Code of 1986 and consistent with this Agreement for the portion of each payment attributable to wages and an IRS form 1099 for the portion attributable to non-wages. If the Internal Revenue Code, the regulations issued thereunder, or other relevant tax laws change after the effective date, the processes in this subparagraph may be modified in a manner to ensure compliance with any such changes. The settlement administrator will include a substitute IRS form W-9 with the claim form. The failure by any class member to provide a completed W-9 form will not preclude the class member from recovering under this Agreement. The settlement administrator will be solely responsible for any other withholdings, in addition to those referred to above.

f.       Each claimant will be responsible for the payment of the taxes attributable to his or her W-2 wage portion and form 1099 non-wage portion (federal, state, and local) owed as a result of receiving any consideration under this Agreement.

9.       <u>Final Settlement Amount</u>

a.       Within the later of 10 days after the effective date of both this settlement and the settlement in *Barragan,* Life Alert will send the settlement administrator the "final settlement amount." No payments are due hereunder until and unless the effective date is reached in both *McGreevy* and *Barragan*.

b.       The "final settlement amount" will be equal to the gross settlement amount less the pro rata amounts of the net settlement amount that are allocated to each class member who (i) elects to opt-out of the settlement or (ii) fails to file a valid claim form. The final settlement amount will be used to make all payments required under this Agreement, including the employer share of any payroll taxes. The final settlement amount is the total amount that will be sent by Life Alert to the settlement administrator. In short, the pro rata amounts allocated to each settlement class member who opts-out of the settlement or fails to file a timely and complete claim form and the related portion of employer payroll taxes will be subtracted from the gross settlement amount, subject to the applicable 50 percent floor requirement.

c.       The final settlement amount will be treated under Treas. Reg. section 1.468B-1. as a "qualified settlement fund." And, Life Alert and the settlement administrator will jointly and timely make the "relation back election" to the earliest permitted date, as provided for in Treas. Reg. section 1.468B-1(j)(2). The election will be made in compliance with the procedures and requirements set forth in such regulations. The settlement administrator will be solely responsible for properly preparing and delivering the necessary documents for signature by all necessary parties and for making the appropriate filing.

d.       For purposes of Internal Revenue Code of 1986 section 468B and Treas. Reg. section 1.468B-2(k)(3), Rust Consulting will be the qualified settlement administrator and will timely and properly file all information and other tax returns necessary or available with respect to the settlement amounts including without limitation the returns described in Treas. Reg. sections 1.468B-2(k)(1) and 1.468B-(2)(l). The returns will be consistent with this Agreement and in all events will reflect that all taxes including any estimated taxes, interest or penalties arising with respect to the income earned by the final settlement amount will be paid out

13

of the final settlement amount. All taxes, expenses, and costs incurred relating to the operation and implementation of this paragraph, including, without limitation, any expenses of tax counsel or accountants and mailing costs and expenses relating to the filing or failing to file any returns (hereinafter "tax expenses") will be paid out of the final settlement amount and income earned on this amount. Taxes and tax expenses will be treated as, and considered to be, a cost of administrating the individual settlement amounts and the qualified settlement administrator will be obligated to withhold from individual settlement amounts any funds necessary to pay such taxes and tax expenses and any taxes that may be required to be withheld pursuant to Treas. Reg. section 1.468B-2(l)(2).

e. During any period the final settlement amount is not a qualified settlement fund for tax purposes, the qualified settlement administrator will pay Life Alert in a timely fashion from the final settlement amount sufficient funds to enable it to pay taxes, including any estimated taxes, interest, or penalties on income earned by the final settlement amount, other than interest or penalties incurred by Life Alert as a result of any action or inaction on the part of Life Alert that resulted in the final settlement amount being treated as other than a qualified settlement fund. The parties agree to cooperate fully with the qualified settlement administrator, their tax attorneys, and accountants to the extent necessary to carry out the provisions of paragraphs IV.E.9.c.-IV.E.9.e.

10. Class Size. If the settlement class sizes increase by more than 10 percent above the number identified in the class lists and the data provided for mediation (with Life Alert to determine in its discretion whether such additional persons are settlement class members), Life Alert will increase the net settlement amount proportionately by the percentage above 10 percent. This provision is to be analyzed on the basis of each individual settlement class.

F. Final Approval

1. Following the end of the claim filing and opt-out periods, the parties will file a joint motion for final approval of the settlement and the plaintiffs will file motions for approval of class representative enhancements and attorneys' fees and costs. These motions will be filed within 30 days after the conclusion of the claim filing and opt-out periods or as otherwise directed by the Court. The parties will take all necessary actions to secure final approval of the settlement.

2. In the event this Agreement is not approved by the Court or is disapproved on appeal, the Agreement will be null and void in its entirety, unless expressly agreed to in writing by the parties.

14

G.    Delivery Of Settlement Checks

1.    The settlement administrator will provide the parties with the final list of claimants who are entitled to receive payments under the settlement within 20 days after the effective date.  The list will include for each claimant their (i) full name, (ii) best known address, (iii) social security number, and (iv) pro rata share of the final settlement amount based upon the formula in paragraph IV.E.8.a. This information will remain confidential and be disclosed only to the settlement administrator and counsel for the parties, except as required by taxing authorities or the Court.  No claimant is required to maintain personal settlement information as confidential.

2.    The settlement administrator will mail to claimants settlement checks within 20 days after the effective date of this settlement and the *Barragan* settlement, whichever effective date is later.  For claimants whose settlement check is returned as undelivered, the settlement administrator will take reasonable steps to locate the claimant and re-mail the check.

3.    Settlement checks which are not presented for payment after 180 days of mailing will be transmitted by the settlement administrator to two cy pres organizations.  The parties will each select one such cy pres organization and any unclaimed amount will be divided equally between these two organizations. Class counsel may assist in attempting to locate settlement class members whose settlement check was returned as undeliverable.  The settlement administrator will provide notice of the transmittal of any unclaimed funds to counsel for the parties. Claimants who fail to cash their settlement checks will be deemed to have waived any right in or claim to a settlement share, but the Agreement will remain binding on them.  Plaintiffs designate MFY Legal Services as their cy pres organization and Life Alert designates Bet Tzedek as its cy pres organization.

H.    Dismissal Of Action With Prejudice:  Plaintiffs and settlement class members accept the benefits provided herein as consideration for their full release and satisfaction of all claims asserted in this action or covered in this Agreement. Based on the provisions herein, plaintiffs and settlement class members agree to dismiss *McGreevy* with prejudice and seek such dismissal within 10 business days after the settlement administrator receives the final settlement amount as described in paragraph IV.E.9.

15

I.      Documents

1.      To preserve all private and confidential information related to Life Alert and settlement class members, class counsel will, within 90 days after the dismissal of *McGreevy*, destroy or return all documents exchanged during the course of the litigation that were subject to the protective order or were designated "confidential" in these actions.  Class counsel may elect to destroy the documents, in which event they will certify under penalty of perjury that the documents have been destroyed.  This provision will not apply to court filings or correspondence maintained by counsel in the ordinary course of business.  Notwithstanding the above, counsel for any party will be entitled to retain all "confidential" material, including abstracts or summaries of such material, referenced in work product or required by applicable ethical rules and malpractice policies, provided that any such materials are maintained and protected in accordance with the terms of the Confidentiality Agreement herein (*see McGreevy* ECF no. 108).

2.      Class counsel will confirm in writing that the obligations set forth in paragraph IV.I.1. have been completed.

J.      Parties' Authority

1.      The signatories represent that they are fully authorized to enter into this Agreement and to bind the parties hereto to the terms and conditions of the Agreement.

2.      The parties acknowledge that throughout negotiations they have been represented by counsel experienced in wage and hour class litigation and that this Agreement is made with the consent and approval of counsel who have prepared the Agreement.

K.      Mutual Full Cooperation:  The parties hereby agree to cooperate to implement and effectuate the terms of this Agreement, including by executing all necessary documents.

L.      Enforcement Actions:  If any party institutes any legal action or other proceeding to enforce this Agreement against any other party, the unsuccessful party will pay the successful party reasonable attorney's fees and costs incurred in enforcing the Agreement.

M.     Limitations On Publicity

1.      The parties and their counsel agree that they will not publicize this settlement or the events and negotiations surrounding this Agreement in any way prior to final approval of the Agreement except by joint pleadings filed with the Court. After the settlement is final, comment or discussion with any media outlet will be limited to the information in the public record and no party will provide additional statements except a party may represent that the settlement is beneficial to both the class and defendant in response to press inquiries. No party will disparage the other and plaintiffs and class counsel will not imply or state to anyone that this settlement represents an acknowledgment of any wrongdoing by defendant in this or any other matter. The parties may communicate about the terms of the Agreement with their attorneys, tax advisors, and immediate family members. Nothing in this paragraph prevents Life Alert from making necessary public disclosures regarding the settlement and discussing the settlement with securities analysts and financial institutions. The term "parties" in this paragraph refers only to the plaintiffs in the first paragraph of this Agreement.

2.      If any party believes a statement violates paragraph IV.M.1, the parties will meet and confer in an effort to resolve the dispute. However, if unable to resolve the dispute, the parties will submit the dispute to the Court for decision. If the Court decides that a violation has occurred, the determination will be binding and the offending party must immediately refrain from engaging in the offending conduct. The prevailing party will be entitled to an award of reasonable attorney's fees and costs.

N.     Modification:  This Agreement and its exhibits may not be changed, altered, or modified, except in writing signed by the parties, and approved by the Court.

O.     Entire Agreement:  This Agreement and its various exhibits constitute the entire agreement between the parties concerning the subject matter hereof. No extrinsic evidence will modify or contradict the terms of this Agreement.

P.     Voiding The Agreement

1.      Life Alert may void the Agreement under paragraph IV.C.16.

2.      In the event this Agreement is not approved by the Court, the Agreement will be null and void in its entirety, unless expressly agreed in writing by all parties. The Agreement will also be null and void in its entirety if the court in *Barragan* does not grant final approval of the settlement in *Barragan*.

17

3.      Notwithstanding the above paragraph, if the Court rejects any portion of paragraphs IV.M.1. and IV.M.2., the parties agree that such portions will be removed from the Agreement or modified in a manner consistent with any such ruling.  The enforceability of the remainder of the Agreement will not be affected by such removal or modification.

4.      If judicial approval of the Agreement is otherwise denied, the parties will attempt to reach agreement on provisions rejected by the Court for a period not less than 45 days after the date that approval is denied, and will seek approval of any renegotiated agreement.  The parties will file a joint motion for a stay of the action during the 45-day period.

Q.      Counterparts:  This Agreement may be executed in counterparts, and when each party has executed at least one counterpart, it will be considered for all purposes an original, and taken together, will constitute one Agreement, which will be binding and effective as to all parties.

R.      Miscellaneous

1.      The parties agree to the stay of all proceedings in this action, except as may be necessary to implement the terms of the Agreement, pending final approval of the Agreement.

2.      The Agreement will be interpreted under New York law.

3.      No party or member of any settlement class will be considered a prevailing party for any purpose.

4.      Life Alert will prepare first drafts of the joint motions for both preliminary and final approval of the settlement and will provide these draft joint motions to plaintiffs at least one week before their filing deadline and which will be filed only after plaintiffs have provided any edits or comments and given their final assent.  The same procedure will apply to plaintiffs' motion for approval of attorney's fees, class representative enhancements, and litigation expenses.

Dated:  June __, 2016

_____
Plaintiff Margaret McGreevy

18

Dated:  June __, 2016

                        _____

Plaintiff Elaine Danielle Anderson

Dated:  June __, 2016

                        _____

Plaintiff Gerald J. Jacoby

As to the following sections:  III.A, III.F, IV.B.2, IV.C.1, IV.C.13, IV.C.14, IV.E.3, IV.E.8.e, IV.F.1, IV.M, IV.R.1, and IV.R.4:

Dated:  June __, 2016

                    _____

Rachel Bien
Melissa L. Stewart
Chauniqua Young
Outten & Golden LLP
*McGreevy* class counsel

Dated:  June __, 2016

                    _____

Isaac Shepher, President and CEO
On behalf of defendant Life Alert Emergency Response, Inc.

Dated:  June __, 2016

                    _____

Joel M. Cohn
Gary M. McLaughlin
Akin Gump Strauss Hauer & Feld LLP
Counsel for defendant

3.    Notwithstanding the above paragraph, if the Court rejects any portion of paragraphs IV.M.1. and IV.M.2., the parties agree that such portions will be removed from the Agreement or modified in a manner consistent with any such ruling. The enforceability of the remainder of the Agreement will not be affected by such removal or modification.

4.    If judicial approval of the Agreement is otherwise denied, the parties will attempt to reach agreement on provisions rejected by the Court for a period not less than 45 days after the date that approval is denied, and will seek approval of any renegotiated agreement. The parties will file a joint motion for a stay of the action during the 45-day period.

Q.    Counterparts: This Agreement may be executed in counterparts, and when each party has executed at least one counterpart, it will be considered for all purposes an original, and taken together, will constitute one Agreement, which will be binding and effective as to all parties.

R.    Miscellaneous

1.    The parties agree to the stay of all proceedings in this action, except as may be necessary to implement the terms of the Agreement, pending final approval of the Agreement.

2.    The Agreement will be interpreted under New York law.

3.    No party or member of any settlement class will be considered a prevailing party for any purpose.

4.    Life Alert will prepare first drafts of the joint motions for both preliminary and final approval of the settlement and will provide these draft joint motions to plaintiffs at least one week before their filing deadline and which will be filed only after plaintiffs have provided any edits or comments and given their final assent. The same procedure will apply to plaintiffs' motion for approval of attorney's fees, class representative enhancements, and litigation expenses.


Dated:  June 27, 2016

_Margaret McGreevy_
Plaintiff Margaret McGreevy

18

DocuSign Envelope ID: 8D0BB8AF-F83A-4AEE-ABB8-258C90EDA083

Dated: 7/28/2016

DocuSigned by:

Plaintiff Elaine Danielle
Anderson

Dated: July __, 2016

_____

Plaintiff Gerald J. Jacoby

As to the following sections:  III.A, III.F, IV.B.2, IV.C.1, IV.C.13, IV.C.14, IV.E.3,
IV.E.8.e, IV.F.1, IV.M, IV.R.1, and IV.R.4:

Dated: ~~July~~ October 11 __, 2016

_____

Rachel Bien
Melissa L. Stewart
Chauniqua Young
Outten & Golden LLP
*McGreevy* class counsel

Dated: July __, 2016

_____

Isaac Shepher, President and
CEO
On behalf of defendant Life
Alert Emergency Response,
Inc.

Dated: July __, 2016

_____

Joel M. Cohn
Gary M. McLaughlin
Akin Gump Strauss Hauer &
Feld LLP
Counsel for defendant

19

Dated:  July __, 2016

 

                                 _____
Plaintiff Elaine Danielle
Anderson

Dated:  July <u>28</u>, 2016

                                 _Gerald J Jacoby_____
Plaintiff Gerald J. Jacoby

As to the following sections:  III.A, III.F, IV.B.2, IV.C.1, IV.C.13, IV.C.14, IV.E.3, IV.E.8.e, IV.F.1, IV.M, IV.R.1, and IV.R.4:

Dated:  July __, 2016

                                 _____
Rachel Bien
Melissa L. Stewart
Chauniqua Young
Outten & Golden LLP
*McGreevy* class counsel

Dated:  July __, 2016

                                 _____
Isaac Shepher, President and
CEO
On behalf of defendant Life
Alert Emergency Response,
Inc.

Dated:  July __, 2016

                                 _____
Joel M. Cohn
Gary M. McLaughlin
Akin Gump Strauss Hauer &
Feld LLP
Counsel for defendant

19

Dated: June __, 2016

_____
Plaintiff Elaine Danielle
Anderson

Dated: June __, 2016

_____
Plaintiff Gerald J. Jacoby

As to the following sections:  III.A, III.F, IV.B.2, IV.C.1, IV.C.13, IV.C.14, IV.E.3, IV.E.8.e, IV.F.1, IV.M, IV.R.1, and IV.R.4:

Dated: June __, 2016

_____
Rachel Bien
Melissa L. Stewart
Chauniqua Young
Outten & Golden LLP
*McGreevy* class counsel

October 11
Dated: ~~June~~ __, 2016

_____
Isaac Shepher, President and
CEO
On behalf of defendant Life
Alert Emergency Response,
Inc.

October 11,
Dated: ~~June~~ __, 2016

_____
Joel M. Cohn
Gary M. McLaughlin
Akin Gump Strauss Hauer &
Feld LLP
Counsel for defendant

19