UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                     :

MARGARET McGREEVY, individually and on  :
behalf of all others similarly situated, et al.,       :
                                      Plaintiffs,    :          14 Civ. 7457 (LGS)
                                                     :
                     -against-              :          **OPINION AND ORDER**
                                                     :
LIFE ALERT EMERGENCY RESPONSE, INC., :
                                                  Defendant.   :
------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 04/28/2017

LORNA G. SCHOFIELD, District Judge:

On October 11, 2016, Plaintiffs moved for final approval of a class action settlement of up to $3,281,250 and separately moved for approval of attorneys' fees and costs to be paid out of the settlement fund to Class Counsel. By Order dated December 2, 2016, the Court approved the Agreement as fair and adequate under Federal Rule of Civil Procedure 23(e), but reserved judgment on Plaintiffs' motion for fees and costs. Plaintiffs seek attorneys' fees amounting to 33.3% of the total possible settlement, or $1,093,750, along with reimbursement of $34,141.96 in costs. For the following reasons, the motion is granted in part and denied in part.

## I. BACKGROUND

This case deals with claims that Defendant failed to pay proper wages to more than 2,000 individuals in violation of the Fair Labor Standards Act ("FLSA"), New York law and Florida law. The case was mediated in conjunction with *Barragan v. Life Alert Emergency Response, Inc.*, No. BC556127, a partially overlapping action filed in California state court. With the assistance of a mediator, the parties in both the instant case and *Barragan* negotiated a final, global settlement.

The settlement in this case is reflected in a settlement agreement (the "Agreement") and commits Defendant to pay up to $3,281,250 (the "gross settlement amount"). This amount

covers all payments to settle the action -- payments to class members, attorneys' fees, costs, the cost of settlement administration, service awards and all payroll and withholding taxes. All fees and costs are deducted from the gross settlement amount before funds are paid to the class members resulting in the "net settlement amount." Any fees, costs or service awards that are reduced by the Court become part of the net settlement amount. The total fees and costs paid to Class Counsel, the settlement administrator and the named plaintiffs are capped at 37.5% of the gross settlement amount.

The settlement is allocated among three settlement classes. The FLSA class consists of the 372 sales persons who opted into the FLSA collective, out of the 1,400 potential opt-in FLSA plaintiffs who worked in Defendant's offices nationwide.[1] The New York and Florida classes are Rule 23 opt-out classes, consisting of 781 and 957 independent contractors who worked in those respective states. The gross settlement amount is allocated 23% to the FLSA class, 34% to the New York class and 43% to the Florida class based on the approximate number of work weeks that each settlement class worked and the approximate damages that class members would have recovered if Plaintiffs were successful at trial. Within each class, the net settlement

---

[1] Numerous studies and articles show that potential class and collective members rarely participate in class action settlements when such settlements require them to opt in. *See, e.g.*, William F. Allen, *Defending Employers in Complex Wage and Hour Litigation*, *in* Strategies for Employment Class & Collective Actions: Leading Lawyers on Addressing Trends in Wage and Hour Allegations and Defending Employers in Class Action Litigation 71, 83 (2012), Westlaw 2012 WL 5900370, at *8 ("Once a Rule 23 class is certified, 'opt-outs' are rare, leaving virtually 100[%] participation by the class. In an FLSA action, opt-in rates are much lower, typically in the 10 to 30[%] range but as high as 50 to 70[%] in certain job categories."); Andrew C. Brunsden, *Hybrid Class Actions, Dual Certification, and Wage Law Enforcement in the Federal Courts*, 29 Berkeley J. Emp. & Lab. L. 269, 291–94 (2008) (surveying 21 opt-in FLSA cases and finding average participation rate to be 15.71%); Catherine K. Ruckelshaus, *Labor's Wage War*, 35 Fordham Urb. L.J. 373, 387 (2008) ("For several reasons, including fear of reprisal and an unwillingness to act, individuals typically do not respond to notices of collective action by taking affirmative steps to opt-in or opt-out of class action lawsuits.").

amounts are allocated pro rata based on the total number of work weeks for each settlement class member, regardless of the number of class members who actually share in the settlement proceeds.

The FLSA class members are entitled to recover without the filing of a claim form. For the New York and Florida classes, the Agreement is a claims-made settlement, meaning that only members of those two classes who submit a proper and timely claim form are entitled to their share of the New York and Florida settlement amounts. Defendant is required to pay at least 50% of the net settlement amount to members of these classes. Class members submitted claim forms representing 53% of the New York class work weeks and 59% percent of the Florida class work weeks. Defendant is not required to disburse unclaimed funds allocated to the New York and Florida classes -- i.e., 47% of the New York class funds and 41% of Florida class funds.

If Class Counsel's fees and other costs were awarded in the amounts requested, the FLSA class would receive $485,842.35 in settlement funds, the New York class would receive $380,646.92 and the Florida class would receive $535,905.24, for an average of approximately $1,499 per FLSA class member, $2,136 per New York class member and $1,711 per Florida class member. Any checks not cashed by class members within 180 days will be distributed to cy pres beneficiaries, MFY Legal Services and Bet Tzedek.

Class Counsel is Outten & Golden LLP, a 50+ attorney firm experienced in class action litigation. Class Counsel's work on the case included a pre-filing investigation, filing the Complaint, moving for conditional certification of the FLSA collective, opposing Defendant's motion to compel certain opt-in plaintiffs to arbitrate their claims individually, filing an amended complaint to include the Florida class, engaging in approximately eleven months of discovery, preparing for and participating in mediation, negotiating the Agreement and drafting and filing

3

documents in support of both preliminary and final approval of the Agreement. Through October 7, 2016, Class Counsel worked a total of 3,024.25 billable hours prosecuting and negotiating the settlement of this case. This tally excludes time that will be spent administering the settlement. Based on the hours worked and the hourly rate for each attorney, paralegal and staff member who worked on the case, Class Counsel calculates a lodestar of $1,060,602.50. The requested fee award of 33.3% of the fund, or $1,093,750, would represent a multiplier of 1.03 of Class Counsel's proposed lodestar.

## II. LEGAL STANDARD

In Rule 23 class actions, the "attorneys whose efforts created the fund are entitled to a reasonable fee -- set by the court -- to be taken from the fund." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). The reasonableness of a fee in this Circuit is evaluated based on consideration of the six *Goldberger* factors: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . .; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Id.* at 50. It is the district court's duty "to act as a fiduciary who must serve as a guardian of the rights of absent class members." *McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 419 (2d Cir. 2010) (citation omitted). Fee awards "should be based on scrutiny of the unique circumstances of each case, and a 'jealous regard to the rights of those who are interested in the fund.'" *Id.* at 426 (quoting *Goldberger*, 209 F.3d at 53).

The Second Circuit has approved the use of two methods to calculate attorneys' fees: the "lodestar" method and the "percentage of the fund" method. *See id.* at 417–19. Under the lodestar method, the district court multiplies the reasonable hours billed by a reasonable hourly rate to create a presumptively reasonable fee. *See Goldberger*, 209 F.3d at 47; *McDaniel*, 595

F.3d at 423.  Under the percentage of the fund method, class counsel is awarded a reasonable percentage of the total value of the settlement fund created for the class.  *See Goldberger*, 209 F.3d at 47.  The percentage of the fund method is the trend in this Circuit.  *See McDaniel*, 595 F.3d at 417–19.  When the percentage of the fund method is used, the Second Circuit "encourage[s] the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage."  *Goldberger*, 209 F.3d at 50 (internal quotation marks omitted).

## III. DISCUSSION

### A. Attorneys' Fees

Following the approach set forth in *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344 (S.D.N.Y. 2014), this Opinion applies the percentage of the fund method and considers the *Goldberger* factors in three steps.  First, the Opinion determines a baseline or benchmark for a reasonable fee with reference to other common fund settlements of a similar size and complexity, taking into account the requested fee in relation to the settlement, the magnitude and complexity of the case and the policy consideration of using a sliding scale based on the amount of the settlement to avoid a windfall to class counsel.  Second, the Opinion considers the risk to Class Counsel, the quality of representation and other public policy concerns in order to make any necessary adjustments to the baseline fee.  Third, the Opinion applies the lodestar method as a cross check, taking into account the time and labor expended by Class Counsel.

### 1. Comparison to Court-Approved Fees in Other Common Fund Settlements

In using the percentage of the fund approach, the critical *Goldberger* factor is necessarily the size of the requested fee in relation to the settlement. *See In re Colgate-Palmolive Co.*, 36 F. Supp. 3d at 348. A sliding scale approach -- awarding a smaller percentage of the settlement as the amount of the settlement fund increases -- is appropriate in order to avoid overcompensating plaintiffs' counsel to the detriment of the class members they represent. *See In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 772 F.3d 125, 134 (2d Cir. 2014) ("When considering common fund or class action law suits, we have recognized that '[district] courts have traditionally awarded fees for common fund cases in the lower range of what is reasonable' given the 'economies of scale[.]'") (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 122 (2d Cir. 2005)); *Goldberger*, 209 F.3d at 52 (noting that "it is not ten times as difficult to prepare, and try or settle a 10 million dollar case as it is to try a 1 million dollar case"). At the same time, it is important to ensure that the fee awarded decreases in such a way that some percentage of each extra dollar gained for the class goes to counsel, so that attorneys do not fear that they will receive a smaller award by securing a larger award for the class. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445–46 (E.D.N.Y. 2014).

Analyzing empirical evidence of attorneys' fees in similar cases provides a useful starting point for a sliding scale that takes into account the magnitude and complexity of the case and the policy consideration of avoiding a windfall to class counsel. Empirical evidence shows that for common fund settlements of a similar size to this one, the median percentage for fees is between 25% and 27.5%. *See* Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical Legal Stud. 811, 835, 839 (2010) (analyzing nearly 700

common fund settlements from 2006 and 2007); Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class Action Settlements: 1993-2008*, 7 J. Empirical Legal Stud. 248, 251, 262, 265 (2010) (analyzing nearly 700 common fund settlements from 1993 to 2008). *Cf.* William B. Rubenstein, 5 *Newberg on Class Actions* § 15:78 (5th ed. Supp. Dec. 2016) (mean percentage for fees in Second Circuit class action cases from 2006 to 2011 was 26.9%). Empirical evidence shows that for labor and employment cases, the median fee is between 25% and 28%. *See* Fitzpatrick, *supra*, at 835; Eisenberg & Miller, *supra*, at 262.[2]

Plaintiffs urge the Court to find that a 33.3% fee is reasonable, and cite seven cases from 2009 to 2015 that awarded fees of 33.3% of the relevant settlement.[3] These cases are an extremely limited sample of the totality of cases in which fees were awarded from common fund settlements. Other wage and hour cases decided in this District during the same time period awarded significantly lower percentages in determining attorneys' fees. *See, e.g.*, *Ortiz v. Chop't Creative Salad Co.*, 89 F. Supp. 3d 573, 598 (S.D.N.Y. 2015) (awarding 20% of $800,000 settlement as fees); *Sakiko Fujiwara v. Sushi Yashuda Ltd.*, 58 F. Supp. 3d 424, 431, 439 (S.D.N.Y. 2014) (awarding 20% of $2.4 million settlement as fees). The nearly 700 cases aggregated into each of the empirical studies provide a much clearer picture of the average

---

[2] Fitzpatrick includes "workplace claims brought under either federal or state law, with the exception of ERISA cases" in his definition of "labor and employment" cases. Fitzpatrick, *supra* at 818. In addition to wage and hour cases, these cases could include Title VII and Americans with Disabilities Act cases, among others. Eisenberg and Miller do not define the types of cases that fit within their "employment" category. *See* Eisenberg & Miller, *supra*.

[3] Only four of these cases are from this District. *See Zeltser v. Merrill Lynch & Co.*, No. 13 Civ. 1531, 2014 WL 4816134, at *8 (S.D.N.Y. Sept. 23, 2014) (awarding 33.3% of $6.9 million maximum settlement); *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *10 (S.D.N.Y. Apr. 16, 2012) (awarding 33.3% of $2.35 million settlement); *Capsolas v. Pasta Res. Inc.*, No. 10 Civ. 5595, 2012 WL 4760910, at *8 (S.D.N.Y. Oct. 5, 2012) (awarding 33.3% of $5.25 million settlement); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06 Civ. 4270, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (awarding 33% of $3.265 million settlement).

percentage awarded to counsel in common fund settlements, as they take into account both higher percentage cases like those cited by Plaintiffs and cases that award much lower fees, like those cited above.

The magnitude and complexity of this case points toward a baseline fee percentage that falls in the middle of the median fees found by the empirical studies. Among FLSA cases, the most complex type is the "hybrid" action brought here, where state wage and hour violations are brought as class actions pursuant to Rule 23 in the same case as the FLSA collective action. *See, e.g.*, *Siler v. Landry's Seafood House–N.C., Inc.*, No. 13 Civ. 587, 2014 WL 2945796, at *9 (S.D.N.Y. June 30, 2014); *Sakiko Fujiwara*, 58 F. Supp. 3d at 435 ("moderate complexity" of wage and hour case with request for class certification "militate[d] toward a favorable fee award for class counsel").

In light of the requested fee in relation to the settlement, the magnitude and complexity of the case, the policy consideration of using a sliding scale to avoid a windfall to Class Counsel and the Court's role as a fiduciary that protects the rights of absent class members, *see, e.g.*, *Goldberger*, 209 F.3d at 52, a reasonable baseline fee for this case is 26.5% of the settlement fund, or $869,531.25.

### 2. Analysis of Risk, Result and Policy Considerations

The reasonable baseline fee in this case may be increased or decreased based on a consideration of three additional *Goldberger* factors -- the risk of the litigation, the quality of representation and any remaining policy considerations.

#### a. Risk of Litigation

Class Counsel undertook some risk in accepting the case on a contingency basis. *See Detroit v. Grinnell Corp.*, 495 F.2d 448, 471 (2d Cir. 1974), *abrogated on other grounds by*

*Goldberger,* 209 F.3d 43 ("[D]espite the most vigorous and competent of efforts, success is never guaranteed."). Class Counsel states that the case was risky due to uncertainty about the applicability of certain FLSA exemptions, whether Defendant properly classified the class members in this case as independent contractors and whether a substantial portion of the class would be required to arbitrate their claims individually. While all litigation carries inherent risk, the risk in this case was not so unusual as to merit a change in the reasonable baseline fee for this case. *See Goldberger*, 209 F.3d at 53 (risk does "not always compel enhanced fees," particularly where doing so would lead to overcompensation).

### b. Quality of Representation

The quality of counsel's representation may also present a reason to alter the reasonable baseline fee. *See id.* at 55. Quality of representation is "best measured by results." *Id.* Class Counsel represents that the overall settlement amount is approximately 52% of the unpaid wages that class members would receive if they prevailed on their claims at trial. This estimate is likely high, given that the full settlement amount is not guaranteed and will not be paid out. Nonetheless, the results obtained by Class Counsel support the 26.5% award discussed above. Class Counsel's submissions do not show a result so exceptional as to merit an increase in the baseline percentage. *See Goldberger*, 209 F.3d at 55–56 (declining to find error in district court decision not to award a fee multiplier where class counsel alleged that they recovered nearly 90% of class damages); *McDaniel*, 595 F.3d at 424 (noting that the Second Circuit upheld a fee award with no multiplier where district court praised counsel as "cream of the profession").

### c. Policy Considerations

Lastly, the reasonable baseline fee may be altered due to policy considerations. *See, e.g.*, *In re World Trade Ctr. Disaster Site Litig.*, 754 F.3d 114, 127 (2d Cir. 2014) (district court was

9

properly mindful of public policy concerns in case where funds were limited and overcompensating attorneys would take money away from needy plaintiffs). Counsel's fees should reflect the important public policy goal of "providing lawyers with sufficient incentive to bring common fund cases that serve the public interest." *Goldberger*, 209 F.3d at 51. Protecting workers from wage-and-hour violations is of genuine public interest, and fees in such cases should provide incentives for counsel to bring such cases in the future.

On the other hand, fees should compensate counsel only for the value they create, or the court risks incentivizing class counsel to settle cases in a manner detrimental to the class. While the Second Circuit requires district courts to allocate fees based on a percentage of the "total funds made available, whether claimed or not," *Masters v. Wilhemina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007), district courts may reduce the fee percentage awarded to class counsel based on consideration of the *Goldberger* factors. *See id.* ("Use of the entire [f]und as a basis for the computation does not necessarily result in a 'windfall' because the court may always adjust the percentage awarded in order to come up with a fee it deems reasonable in light of the *Goldberger* factors.").

Here, policy considerations merit a reduction in the percentage awarded to Class Counsel, given the reversionary nature of the settlement for the vast majority of participating class members -- 1,738 out of 2,110, or 82.4%. Reversionary settlements are not inevitable; class action settlements may be structured so that, after deductions for attorneys' fees and expenses, all remaining settlement funds are paid out. Familiar examples of this practice are: (1) allocating available funds pro rata among all class members who submit claims after the payment of fees and expenses; (2) dispensing with the claims process entirely and sending checks to a last known address if class members are known and the amounts of their respective recoveries are assigned,

as is the case with the FLSA Class here; and (3) reallocating any unclaimed funds to those class members who do make claims if amounts are assigned to all class members. *See, e.g.*, Rubenstein, *supra*, §§ 12:15, 13:7. Here, however, the settlement was structured so that unclaimed monies are never paid out by Defendant. In such a case, the resulting gross settlement amount seems inflated and illusory because it is well known that Rule 23 class members participate in the monetary recovery in small percentages if the submission of a claim form is required, even though they are deemed class members bound by a settlement unless they opt-out. *See, e.g.*, 2 *McLaughlin on Class Actions* § 6:24 (13th ed. 2016 Supp. Oct. 2016) ("Claims-made settlements typically have a participation rate in the 10-15[%] range.").

Given the low participation rates for "claims made settlements" (i.e., settlements that require the filing of a claim form in order to share in the settlement proceeds), a reversionary settlement structure (i.e., a provision that unclaimed monies revert back to the defendant) creates perverse incentives and potentially a bad result. Class counsel may agree to a reversionary structure, even though much of the settlement fund will never be paid, as the settlement amount will look more substantial in the notice to class members, and class counsel may hope to recover a fee award based on a percentage of the gross settlement amount. Defendants may acquiesce to a higher gross settlement amount, knowing they will pay only a fraction.

Assuming that a defendant cares only about the ultimate amount paid out and is indifferent to the allocation between class counsel and class members, the result of a reversionary settlement is that class counsel recovers more if the fee award is based on a percentage of the gross amount, and class members reap less. For example, if a defendant is prepared to pay $1 million to settle a lawsuit, it might agree to pay $2 million if it estimated the likely payout at 50%; but the same defendant would agree to pay only $1 million if the

settlement were non-reversionary and 100% certain to be paid out. If class counsel were awarded a 30% fee on the $2 million reversionary settlement, class counsel would get $600,000 and class members would get $400,000. If class counsel were awarded a 30% fee on the $1 million non-reversionary settlement, class counsel would get $300,000 and class members would get $700,000. If class counsel were assured of getting the same percentage fee for a reversionary and a non-reversionary settlement, then in structuring the settlement, class counsel would have to choose between earning more in attorneys' fees or earning more for their clients.

Weighing the significant policy considerations against reversionary settlements, the unusually high but still modest percentage of New York and Florida class members who submitted claims against the settlement amount, the important public policy goal of encouraging lawyers to bring common fund cases that protect workers, the risk undertaken by counsel, and the able representation in this case, a decrease of 5% of the baseline fee percentage, or $164,062.50, is appropriate. This decrease fulfills the Court's obligation to "jealous[ly]" protect the "rights of those who are interested in the fund," while also providing incentives to bring such cases in the future. *Goldberger*, 209 F.3d at 53 (citation omitted); *cf. R.G. v. Federated Inc.*, No. 14 Civ. 7734, 2016 WL 3072396, at *2 (S.D.N.Y. May 27, 2016) (reducing fee percentage by 5% where counsel failed to keep contemporaneous time records to emphasize the importance of such records, while still providing counsel with suitable compensation for their work on the case). Class Counsel is therefore entitled to 21.5% of the gross settlement amount, or $705,468.75.

### 3. Lodestar Cross Check

When using the percentage of the fund method, it is appropriate to use the lodestar as a "cross check" on the reasonableness of the percentage awarded. *See Goldberger*, 209 F.3d at 50.

"When determining attorneys' fees under the lodestar approach, courts apply the forum rule. According to the forum rule, courts should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." *Restivo v. Hessemann*, 846 F.3d 547, 590 (2d Cir. 2017) (internal quotation marks omitted). "[T]he burden is on the fee applicant to produce satisfactory evidence -- in addition to the attorney's own affidavits -- that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson,* 465 U.S. 886, 895 n.11 (1984).

Courts in this District have consistently found that the reasonable hourly billing rate for partners in wage-and-hour cases is between $300 and $400 per hour and that the reasonable hourly billing rate for mid-level associates is approximately $200 per hour. *See, e.g.*, *Run Guo Zhang v. Lin Kumo Japanese Rest., Inc.*, No. 13 Civ. 6667, 2015 WL 5122530, at *3–4 (S.D.N.Y. Aug. 31, 2015) (finding that partner-level work in wage-and-hour case was worth $300 per hour); *Farmer v. Hyde Your Eyes Optical, Inc.*, No. 13 Civ. 6653, 2015 WL 2250592, at *14 n.10 (S.D.N.Y. May 13, 2015) (finding that $360 per hour was a reasonable rate for attorney with over 16 years of experience); *Marquez v. Erenler, Inc.*, No. 12 Civ. 8580, 2014 WL 5847441, at *2–3 (S.D.N.Y. Nov. 10, 2014) (collecting cases and awarding $400 per hour to partner, $300 per hour to senior associate with 8 to 9 years of experience and $200 per hour to associates with 3 to 4 years of experience); *Trinidad v. Pret a Manger (USA) Ltd.*, No. 12 Civ. 6094, 2014 WL 4670870, at *9 (S.D.N.Y. Sept. 19, 2014) (collecting cases).

Some courts in this District have found that a higher hourly billing rate is appropriate for Outten & Golden attorneys. *See Long v. HSBC USA INC.*, No. 14 Civ. 6233, 2016 WL 4764939, at *11 (S.D.N.Y. Sept. 13, 2016) (awarding $550 per hour to partner with 18 years of experience,

13

$500 per hour to partner with 15 years of experience, $360 per hour to senior associates and $270 to mid-level associates); *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2012 WL 3878144 at *3–4 (S.D.N.Y. Aug. 6, 2012), *aff'd*, 519 F. App'x 1, 3–4 (2d Cir. 2013) (summary order) (awarding $550 per hour to partners with 22+ years of experience, $500 per hour to partner with 14 years of experience, $450 per hour to all other partners, $300 per hour to senior associates with 8+ years of experience, $275 per hour to junior associates and $125 per hour to paralegals); *Rozell v. Rost-Holst*, 576 F. Supp. 2d 527, 545–46 (S.D.N.Y. 2008) (awarding $600 per hour to partners with 34+ years of experience, $350 per hour to senior associates, $250 per hour to junior associates and $125 per hour to paralegals).

However, in those cases, Outten & Golden provided significantly more information than the declaration they provide here, which contains limited background information about 4 of the 21 attorneys (5 partners, 10 associates and 6 staff attorneys) who worked on the instant case. *Cf., e.g.*, *Torres* , 2012 WL 3878144, at *3 (in support of requested fees, Outten & Golden provided three declarations from firm attorneys, redacted retainer agreements with hourly billing rates, declarations from four employment law attorneys and a declaration from a law school professor).

The declaration in this case provides background for partner Rachel Bien, who has 12 years of experience; associate Melissa Stewart, who has approximately 8 years of experience; associate Chauniqua Young, who has approximately 5 years of experience; and staff attorney Rebecca Sobie, who graduated from law school in 1995 and joined Outten & Golden in 2014 after working at another law firm for an unspecified period of time.

Based on the information provided, the quality of the work performed by Class Counsel

and the prevailing rates in this District, appropriate hourly rates are: $450 per hour for Ms. Bien[4], $350 per hour for Ms. Stewart and Ms. Sobie, $250 per hour for Ms. Young and $125 per hour for paralegal work. Class Counsel has not provided sufficient information for its remaining attorneys to merit a rate higher than $450 per hour for partners and $200 per hour for associates and staff attorneys. Applying these revised hourly rates to the billing chart provided by Class Counsel yields a recalculated lodestar of $752,473.75.

The $705,468.75 fee award calculated under the percentage method is reasonable given that it is slightly below the recalculated lodestar.[5] Class Counsel is thus entitled to a fee award of $705,468.75.

**B.     Costs**

Class Counsel also seeks reimbursement of $34,141.96 in out-of-pocket expenses incurred prosecuting the litigation. Counsel is entitled to reimbursement of reasonable litigation expenses from the settlement fund. *See, e.g.*, *Fleisher v. Phoenix Life Ins. Co.*, No. 11 Civ. 8405, 2015 WL 10847814, at *23 (S.D.N.Y. Sept. 9, 2015); Fed. R. Civ. P. 23(h). Class Counsel's expenses, including experts, document processing, mediation, computerized research, travel and printing, were reasonable and necessary to its representation of Plaintiffs. *See, e.g.*, *Long*, 2016 WL 4764939, at *15 (finding similar expenses to be reasonable); *Fleisher*, 2015 WL 10847814, at *23 (same). Plaintiffs' motion for costs is accordingly granted.

---

[4] Class Counsel requests only $300 per hour for the 10 hours that Ms. Bien worked on the California action. That request is granted, rather than the $450 per hour rate applied elsewhere.
[5] If anything, the recalculated lodestar may be high, as it is used as a cross check and therefore does not undertake a line-by-line analysis of Class Counsel's hours and staffing. *See Goldberger*, 209 F.3d at 50 ("Of course, where used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court.").

### C. Effect of Reduced Attorneys' Fees on Reversionary Amount

Under the terms of the Agreement, if the Court awards attorneys' fees less than the amount requested, the reduction becomes part of the net settlement amount available for payment to class members. Because the New York and Florida classes receive payment on a claims made basis, and because these classes did not fully participate in the settlement by filing claims, a large percentage of the fee reduction would not be paid to class members, and would instead revert back to Defendant along with the rest of the unclaimed monies in the net settlement fund.

If Class Counsel received their requested 33.3% of the settlement in attorneys' fees, Defendant would retain $709,963.54 of the $3,281,250 gross settlement amount. The reduction in Class Counsel's fees from the 33.3% requested will lead to payment of the following additional amounts to participating class members -- $89,304.69 to the FLSA class; $69,968.28 to the New York class; and $98,506.95 to the Florida class, as compared to the payments that would be made if Class Counsel received a 33.3% fee. However, it would also lead to Defendant retaining $840,464.87 of the gross settlement amount rather than $709,963.54, which represents an additional $130,501.33 compared to the amount that Defendant would retain if the 33.3% fee award were approved. Therefore, the fee award herein is approved subject to the condition that this incremental reversion of approximately $131,000 is paid to class members.

### IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for fees and costs is GRANTED in part and DENIED in part. Class Counsel is hereby awarded attorneys' fees of $705,468.75 and reimbursement of expenses in the sum of $34,141.96, provided that the $130,501.33 reversion to Defendant is paid to class members.

The Clerk of Court is respectfully directed to close the motion at Docket No. 152.

Dated: April 27, 2017
      New York, New York

*[signature]*
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**